Good morning. May it please the court. Perry Olson representing the appellant Gerald Miller. The most compelling issue in this case is the issue of severance and I take my leave, my support from that. I take both the magistrate judge and the district court's opinion. The magistrate judge himself was especially concerned about how these two murder cases were joined in one given the disparity of murder cases. My problem, Mr. Miller's problem, is there are a number of procedural issues before the court can even get to that. And I want to start off by saying that in response to the 28J letter that the government submitted back in August, citing the Davila v. Davis case, in which the Supreme Court, I would concede, took away my Martinez v. Davis case, my supplemental claim of ineffective assistance of appellate counsel based on the PCR counsel's failure to raise that in the State proceeding. It's pretty clear that that issue is no longer available to me or that means of overcoming procedural default is no longer available to me. So because of that, I am having to revert to the claim that I made before that, which, just to show you how long this case has been pending in the Supreme Court, Martinez v. Ryan, I mean, before the Federal Court, Martinez v. Ryan was issued after I filed my amended petition. Martinez v. Ryan gave rise to a claim that the magistrate judge helped me identify, but then unfortunately, Davila v. Davis took that claim away from me. And so here we are today. What I started off with before the Martinez v. Ryan issue was the claim that Claim 8A, which is the claim of trial court error in the failure to sever the two murder counts for purposes of trial, was itself a due process violation. Now, the State claims that it's procedurally defaulted and the district court agreed because it was barred in the State PCR action because it was not raised in the direct appeal. And this is just a recurring issue of classic procedural default that comes up a lot in these types of cases. What's unique about this case is the state of the law in Oregon at the very moment in time that the State claims that this, that the procedural default happened. By that, I mean when the direct appeal of the conviction was filed. At that point in time, the Court of Appeals had issued this decision in Palmer 1, the Oregon Court of Appeals, which threw into question the state of the law as it existed previously, to the extent it had been clear. It threw into confusion the State of the law in Oregon as to whether an issue had to be preserved and go to the Oregon Appellate Court and whether it instead could be raised for the first time in a State PCR action. And what Palmer 1 rested on, and of course it was changed later, it was overturned by the Oregon Supreme Court, as the State here has pointed out, what Palmer 1 rested on was the fact that the defendant in that case had not preserved the issue for a direct appeal. And for that reason, the Court's reading of the statute, he was free to pursue it for the first time in a PCR matter. So now what the State has done in its appellate brief here is to say that one way around the Palmer 1 issue is to say that the defendant did preserve this issue in the trial court. He did raise a Federal due process challenge in the severance motion that he filed. And the reason for my 21J letter yesterday was to point out that that's not necessarily all that clear. And also to point out the fact that earlier in this litigation in the Federal Court, the State took the opposite position and said that he did not preserve a Federal due process issue. You know, I'm very sympathetic with your having to go through all of this, and it's not at all your fault that there is such a tangled law of procedural default, both on the Federal side and, as it turns out, on the State side, too. For purposes of argument, I'd like to assume for the moment that there's no procedural default that will prevent us from getting to the question of whether these two cases should have been tried together. Can you argue the merits of that one? Because your time's running. Sure, Your Honor. Thank you. What it comes down to is this imbalance of evidence between the two murder cases. And so why is that not merely a possible violation of Oregon law, which doesn't matter much to us, but a violation of Federal due process? Well, indeed, I claim that it is primarily a violation of Federal law. That's the question. So tell me why it's a violation of Federal law. Well, the case I primarily rely on is the Bean case, Bean v. Calderon, which, of course, came after the trial, but it's based on some preexisting Ninth Circuit law and law from the U.S. Supreme Court. And this is a pre-EDPA case, so we can look at that. Yes. Yes, absolutely. And now, what those cases talk about, of course, is both the danger of cross-admissibility. If you have a situation where evidence of each crime is going to be admissible against the other one, then there's less prejudice in that situation. But, and I've argued that point, but for purposes of today's, that the evidence really should not have been cross-admissible. But let's say I'm wrong about that, because I addressed this in my brief, and there is a strong argument that, you know, evidence of the other disappearing, disappeared wife would have been admissible in the other, in the other trial. But what these cases talk, the way these cases present the issue, and I'm talking about the Sandoval case that I cite and the Bean case, I believe, and a later case, Satterfield, is cross-admissibility of evidence isn't necessarily the death knell of a claim that the counts should be severed for trial. And the reason that, for that is, is that even if there might be some cross-admissibility of evidence that has some prejudicial impact, it's really the weight of the evidence on one murder count affecting the lesser evidence on the other murder count that has this overall prejudicial impact, especially on that weaker case. But why do we assume there was a weaker case here, just because it says so in your brief? What's weaker about the one versus the other? Well, let me just say, Your Honor, that the magistrate judge, I think, largely agreed with me. Well, that doesn't matter to me, frankly. I know. Yeah. I understand. But what I would say, Your Honor, is that on the first disappearance, which I think was in 1984 or 85, Mr. Miller really wasn't suspected, or if he was suspected, he certainly wasn't suspected very rigorously. He was questioned. He gave some marginally inconsistent accounts to various people that seemed a little weird, but there was nothing as compared to the second disappearance that really gave rise to a whole lot of suspicion that he actually committed this crime, or that she was even dead. Sure. But if they were committed in reverse order, you would have said the same thing about the other one. He wouldn't have been suspected necessarily when it happens once, but when it happens twice, people start looking at the full picture, and if you have cross-admissibility of the evidence, they're going to get at least some of the flavor of the two disappearances. And so you're right back, it isn't that there's intrinsic weakness in one of the cases. You're saying a person who's killed two of his wives should have a chance to go solo each time to get the full presumption of innocence, and that may be a good argument about why the admissibility of the murders should not be allowed, but it was allowed by the Oregon courts, and it was upheld in the Oregon appellate courts, so we're not in a position to second guess that, are we? Well, again, under pre-EDPA law, I think you can. Only if it's a constitutional due process violation. Yeah, I understand. Okay. And so, again, looking at those cases that I've cited, those really core cases from the Ninth Circuit, there does seem to be a concern expressed there when you have that imbalance. So it's not just that they were not so suspicious the first time as compared to the second time. It's that because of that lesser degree of suspicion, there just simply wasn't the investigation that occurred with the second wife, and therefore there wasn't the facts developed that were presented ultimately at the trial with regard to the second wife that showed not only is this woman dead, the first wife, but he killed her. And so it was really the force of the jury having to hear all of the evidence with respect to the second wife that created that prejudicial impact as to the first wife. The second wife involved all sorts of strange statements that he made, as well as, you know, the woman he was seeing on the side, witnesses saw him coming from where the State came to believe he had disposed of the body, they actually saw him, he had a red face as if he had burned the body, perhaps, was the suggestion. They had soil samples from his truck, which is another issue to be raised. But the point is, there was physical evidence. There were not of the body or anything of a forensic nature, but there was eyewitness accounts of his behavior, of his more recent behavior, as opposed to behavior seven years before, which was the timing of the prior murder case. So that's the gist of it, Your Honor. And, I mean, the facts are incredibly, this was a two-month trial. I could go on and on, but really it's just that imbalance of evidence, which was the precise situation that was dealt with in the Bean case. I mean, that's precisely the issue that is before this Court. So, and, so, that's where I stand on that. And there's other issues regarding his, the inability that he had then, and this was raised before trial much more coherently and more clearly, he claimed that he wanted to testify about one of the murders, but not the other one. That does raise an issue also about his right to testify and not to testify. So that was addressed by the Court, and that's before this Court as well, as another additional reason for why there was prejudice from the failure to sever. So, and I appreciate the Court wanted to kind of get to the merits here. I just want to touch on the procedural issue. Basically, again, it's, we're in a very unique time period when this Palmer One case came out, and that's, that was the state of the law when defendant filed his opening brief. And the state of the law at that point in time was not clear because of that Palmer One decision. And the state takes the position that Palmer One was different because the error in, the error had not been preserved. What I want to say is perhaps the error was not preserved, and that's all the more reason why the Palmer One, under Palmer One, he could not have filed a direct appeal of that issue. Now, I realize I've been inconsistent on that issue as well because at one point I was arguing that the appellate lawyer was negligent in failing to pursue a preserved issue, and now I'm having to say, well, maybe the issue wasn't preserved after all, which falls right into the scenario of Palmer One. Why don't we hear from the other side, and then we'll give you a chance to respond. Thank you. May it please the Court, Susan York on behalf of the state. I'd like to start first with the merits and just quickly respond to the contention that Bean governs this case. Bean is actually distinguishable from this case in two very critical ways. The first way that Bean is distinguishable is that in Bean, the evidence of the two murders was not cross-admissible. The evidence of the two murders here is cross-admissible or was cross-admissible. And this Court in Davis noted that the Ninth Circuit focuses particularly on the cross-admissibility of evidence and the danger of spillover from one case to another, especially when one charge is weaker than the other. So that's the second way that this case is distinguishable from Bean. In Bean, the evidence of one murder was extremely flimsy. It consisted essentially of a single fingerprint that was hotly disputed. There were three defense experts that testified that that fingerprint was not valid, and some other extremely minimal circumstantial evidence. By contrast, the other murder in Bean, the evidence was extremely strong. There was very strong physical evidence linking the defendant to the murder, and there was also defendant's admissions. Here the evidence of the two murders is relatively comparable. In the first murder, the wife—so many of—a lot of the evidence is very similar. The wives disappeared. They were never heard from again. Petitioner then carried on affairs after those disappearances. He made a variety of inconsistent statements. And really importantly, Petitioner admitted to Ms. DeBray that he potentially—she asked him whether one of his split personalities might have killed both of his wives, and he said yes, that was a possibility. She also confronted him, saying that he thought he had killed his two wives, and in response to that, he nodded and hung his head. And she also asked him if he could clear his name by taking a polygraph, and he said that he would probably flunk it. So those statements relate to both wives, and you can find them at transcript 3366, 3385, and 3389. And those are very strong admissions that relate to both wives. So given that evidence, there was no great disparity between the strength of these two cases, certainly not on the level of that in Bean. So for both of those reasons, there was no due process violation as a result of the joinder. I'd like to turn back to the issue of procedural default just for a moment. So a state procedural bar is adequate if it was firmly established and regularly followed at the time of default, and this Court's decision in Morrow focuses on the state of the law at the time of the default, and it identifies the time of the default as the time of trial. Because that is the time when defendant's attorney had to make a decision. If Palmer I arguably suggested that failing to object at trial would allow the claim to be raised for the first time on post-conviction, that's the time when they had to make a decision whether to object or not, and that's the time of default. So here, at the time of petitioner's trial, Palmer I had not yet been decided. Why isn't it at the time of possibility of raising it on direct appeal? Because what Palmer I says is that the failure to raise an issue at trial allows it to be raised for the first time on post-conviction. But what's the default at issue here? The default is his failure to raise it at trial. And not the failure to try to pursue it during the appeal process? That is the way that he sort of essentially defaulted in his direct appeal in that first line of review. It's not the way he defaulted on post-conviction. The reason he couldn't raise it on post-conviction was that he failed to pursue it at trial. And Palmer I, I mean, certainly the state's position is that Palmer I is actually limited to claims challenging the constitutionality of the sentence of conviction, but even if we set that aside for a moment, Palmer I only suggested a limited exception where the claim was not raised at trial. And so in Morrow, this court looked at the time of trial and said, well, at the time of the petitioner's trial in Morrow, Palmer I was actually good law. And because of that, trial counsel may have opted not to raise the issue at trial so that he could raise it for the first time on post-conviction. Here, we don't have that problem. At the time of trial, the law was North. And in fact, the law has always been North. That is, in Oregon's Supreme Court case, Palmer I couldn't affect that. And North dealt directly with these types of claims, and it specifically focuses, again, on the necessity of an objection at trial. That's the issue, and that was the time of default here. At the time of default trial, the law was clearly established. If the court has no further questions, I'm happy to touch on the due process issue related to cross-admissibility or any of the other issues in the case. But if the court has no further questions, we would ask that the court affirm. Thank you so much. Just briefly, my position is the alleged default is the failure to file the appeal or to file the issue, to put the issue in the appeal. So, thank you. Okay, thank both sides for the arguments. Miller v. Baldwin submitted for decision. And that completes our argument calendar for this morning, and we're now in adjournment. Thank both sides. Nice arguments. Very good.
judges: Tashima, W. Fletcher, Lasnik